# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                  **Case No. 11-CR-298**

**JAMES E. JOHNSON**
        **Defendant.**

## DECISION AND ORDER

Defendant James Johnson, charged with drug and firearm offenses, moved to suppress evidence obtained pursuant to two search warrants, arguing that the probable cause showing for the warrants rested upon a previous unlawful search. The parties agreed that the motion could be resolved without an evidentiary hearing, and the magistrate judge handling pre-trial proceedings in this case reviewed the parties' submissions then issued a recommendation that the motion be denied. Defendant objects, requiring me to review the matter de novo.[1] See Fed. R. Crim. P. 59(b).

**I.**

The pertinent facts are undisputed. Police officers investigating defendant's activities obtained and executed search warrants at residences on North 51st Street and North 54th Street in Milwaukee, seizing drugs and a firearm. The officers established probable cause to obtain the search warrants based, in part, upon the fact that a drug-detecting canine alerted to the presence of controlled substances while on the front stoop (just outside the front door)

---

[1]The matter was originally assigned to District Judge Randa but re-assigned to me after his recusal.

of the 54th Street residence. Defendant argues that the canine sniff constituted an unlawful search, and that the warrants were not supported by probable cause absent the evidence uncovered through the canine sniff.

In a case where the defendant contends that a search warrant was tainted by a previous, unlawful search, the court must first determine whether the prior search was, in fact, illegal. If it so finds, the court must then decide whether, after removing from the warrant application the evidence unlawfully obtained, there was still a sufficient basis to establish probable cause. See United States v. Markling, 7 F.3d 1309, 1315 (7th Cir. 1993). Although it appears that the police had additional evidence in the present case, including statements from a confidential informant and surveillance observations (Def.'s Mot. to Suppress [R. 17] at 2-3; Def.'s Supp. to Mot. [R.23] at 4-8, 14-18), the government does not argue that the warrants may stand without the canine sniff. Thus, resolution of the motion requires a determination of whether the canine sniff from the front stoop violated the Fourth Amendment.

**II.**

So long as the police are lawfully present, their use of a trained canine to detect the presence of contraband does not constitute a Fourth Amendment search. See United States v. Brock, 417 F.3d 692, 695-97 (7th Cir. 2005); see also Illinois v. Caballes, 543 U.S. 405, 408 (2005). The principal issue in this case is whether the police were lawfully present on the front stoop when they employed the dog.

The Fourth Amendment generally forbids the police from entering a person's home without a warrant. "This protection is not limited to the four walls of one's home, but extends to the curtilage of the home as well." United States v. French, 291 F.3d 945, 951 (7th Cir. 2002). "Curtilage" is that area outside the home itself but so close to and intimately connected

2

with the home and the activities that normally go on there that it can reasonably be considered part of the home. Id. Whether an area is within a house's curtilage depends not only on proximity to the house but also on the use of the area and efforts to shield it from public view and access, as well as the nature for which it is used. Id. at 951-52 (citing United States v. Dunn, 480 U.S. 294, 302-03 (1987)). Relevant factors include (1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by. Dunn, 480 U.S. at 300-01. Courts applying this test have generally held that unenclosed walkways, driveways, porches and the like – areas a visitor, delivery-person, or other member of the public would ordinarily use to approach the home – are not included in the curtilage. See, e.g., French, 291 F.3d at 953 (collecting cases); United States v. Larson, 63 Fed. Appx. 416, 424 (10th Cir. 2003) (collecting cases); Murphy v. Gardner, 413 F. Supp. 2d 1156, 1167-68 (D. Colo. 2006) (holding that unenclosed front porch containing homeowner's mailbox and newspaper rack did not constitute curtilage); see also United States v. Titemore, 437 F.3d 251, 260 (2nd Cir. 2006) (holding that because the porch was not enclosed and provided the principal means of entrance, officer could lawfully enter onto the porch in an effort to speak with the defendant); United States v. Evans, 27 F.3d 1219, 1228-29 (7th Cir. 1994) (collecting cases and authority).

Based on the photograph of the subject residence submitted by the parties, reproduced on page 3 of the magistrate judge's recommendation, I agree with the magistrate judge that the police did not violate the Fourth Amendment by bringing the dog to the front stoop. The area is not enclosed or otherwise separated from public view, and it represents the approach most

3

visitors to the property would take to reach the front door. As the magistrate judge noted, "The police officer and the canine in this case simply took the path that any delivery-person, mail carrier, solicitor, or visitor would take and therefore did not intrude into an area protected by the Fourth Amendment." (Recommendation [R. 26] at 4.)

In his objections, defendant notes that the stoop is connected to the home. However, "proximity to the home, standing by itself, does not per se, suffice to establish an area as within the curtilage." French, 291 F.3d at 952; see also Titemore, 437 F.3d at 259 ("[W]hile the sliding-glass door and porch are connected to the house and, in this respect, would tend to support a finding that they are within the curtilage of the home, they also constitute part of a principal entranceway, which has associated with it a diminished expectation of privacy."). Defendant notes that a railing surrounds the stoop, but this open, wrought-iron railing does nothing to shield the area from public view or otherwise dissuade someone from approaching; a person need not pass through a gate to get to the front door; as the government notes, the railing appears designed only to prevent one from stumbling off the stoop. Defendant also argues that the stoop's small size does not lend itself to lingering and distinguishes the area from a porch used as an outdoor recreational area for all the world to see. But the stoop is open for all the world to see; further, as defendant concedes, the stoop appears to be used primarily for entering and leaving the house, rather than private activities, and would be used in this fashion by visitors. See Evans, 27 F.3d at 1229 (noting that the route which any visitor to a residence would use is not private in the Fourth Amendment sense).

Defendant cites the Supreme Court's recent decision in United States v. Jones, 132 S. Ct. 945 (2012), in which the Justices found that installation of a GPS device on the underside of a vehicle for the purpose of gathering information about the driver constituted a Fourth

Amendment search. However, unlike in Jones, in the present case the officers did not effect a trespass by approaching the front door. See, e.g., United States v. Cephas, 254 F.3d 488, 493-94 (4th Cir. 2001) (explaining that, absent express orders from the person in possession against any possible trespass, there is no rule forbidding openly walking up the steps and knocking on the front door to ask questions of the occupant, whether the questioner be a pollster, a salesman, or an officer of the law). Indeed, the Jones Court specifically distinguished the case before it, where the officers trespassed upon an "effect" (i.e., Jones's vehicle), from cases where the police gathered information from an "open field" (i.e., an area outside the home's curtilage). 132 S. Ct. at 953 (citing Dunn, 480 U.S. at 300; Oliver v. United States, 466 U.S. 170, 183 (1984)). I see nothing in Jones altering the definition of curtilage, and defendant fails to persuasively argue that Jones, with its focus on trespass to property, requires a different result in this case.[2]

Defendant notes that while a property owner may expect the mail carrier or visitor to use the stoop to approach the house, he would not expect them to use it as a base from which to gather information; in this case, the police used the dog to gather information not otherwise detectable by the public. However, the Supreme Court has held that the use of a well-trained

---

[2]To use Justice Sotomayor's phrasing, there is no indication that through this brief trip to the front stoop the police "usurped [defendant's] property for the purpose of conducting surveillance on him, thereby invading privacy interests long afforded, and undoubtedly entitled to, Fourth Amendment protection." Jones, 132 S. Ct. at 954 (Sotomayor, J., concurring). The K-9 handler's report indicates that he walked the dog up to the front door area at the top of the landing, at which point the dog "immediately made a positive alert." The report indicates that the K-9 officer rewarded the dog and "put him away." (Govt.'s Resp. [R. 22] attach. A.) Although the report does not indicate how long the dog was on the stoop, it appears to have been a very brief time, perhaps a matter of seconds. Defendant in withdrawing his initial request for an evidentiary hearing agreed to present the matter on the facts set forth in the report and photographic exhibits. (Def.'s Supp. to Mot. [R. 23] at 1.)

5

narcotics-detection dog, which does not expose non-contraband items that otherwise would remain hidden from public view, does not implicate legitimate privacy interests; accordingly, a dog sniff is not a search. See Caballes, 543 U.S. at 838.

In his reply brief, defendant compares the dog sniff to the thermal imaging at issue in Kyllo v. United States, 533 U.S. 27 (2001), a technology that allows the police to gain access to information otherwise unknowable without physical intrusion. However, he again fails to grapple with the Supreme Court's determination that a canine sniff by a well-trained narcotics-detection dog is "'sui generis' because it 'discloses only the presence or absence of narcotics, a contraband item.'" Caballes, 543 U.S. at 409 (quoting United States v. Place, 462 U.S. 696, 707(1983)). The Caballes Court specifically distinguished Kyllo on this basis, stating:

> Critical to [the decision in Kyllo] was the fact that the device was capable of detecting lawful activity – in that case, intimate details in a home, such as at what hour each night the lady of the house takes her daily sauna and bath. The legitimate expectation that information about perfectly lawful activity will remain private is categorically distinguishable from respondent's hopes or expectations concerning the nondetection of contraband . . . . A dog sniff . . . that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment.

Id. at 409-10 (internal citations and quote marks omitted).

### III.

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation is adopted, and defendant's motion to suppress is **DENIED**.

Dated at Milwaukee, Wisconsin, this 30th day of April, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge